## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| AKD Business Solutions, LLC, a Florida limited liability company, and Andrew Dewitt, a Florida resident, | ) ) ) |
| Plaintiffs, | ) Case No. ) ) Judge |
| v. | ) ) |
| Flight Super Holdings, LLC, a Delaware limited liability company, and Ohio Transmission LLC d/b/a OTC Industrial Technologies, formerly known as Ohio Transmission Corporation, an Ohio limited liability company, | ) Jury Demanded ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, AKD Business Solutions, LLC ("**AKD**") and Andrew Dewitt ("**Dewitt**") (collectively, "**Plaintiffs**"), sue Defendants, Flight Super Holdings, LLC ("**FSH**") and Ohio Transmission LLC d/b/a OTC Industrial Technologies (formerly known as Ohio Transmission Corporation) ("**OTC**") (collectively, "**Defendants**"), and allege:

## NATURE OF ACTION

1. Plaintiff AKD, together with Plaintiff Dewitt, and Defendant FSH, on behalf of itself and its affiliates (including Defendant OTC), entered into an Acquisition Search Agreement on June 30, 2016 (the "**Agreement**"), which provided that FSH would pay a referral fee to Plaintiff for any target companies acquired by FSH or its affiliated entities, including OTC, following an introduction by Plaintiff. This action seeks damages for breach of the Agreement and quantum meruit stemming from Defendants' failure to pay a referral fee due to

1

Plaintiff following the acquisition of American Industrial Corporation ("**AIC**") by OTC, which is an affiliate of FSH, following an initial introduction by Plaintiff on May 5, 2021.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff AKD is a Florida limited liability company that maintains its principal place of business in Miami-Dade County, Florida. Plaintiff's sole member is Plaintiff Dewitt, who is a resident of Miami-Dade County, Florida and, therefore, Plaintiff AKD is a citizen of Florida for diversity jurisdiction purposes.

3. Plaintiff Dewitt is an individual that resides in Miami-Dade County, Florida and, therefore, is a citizen of Florida for diversity jurisdiction purposes.

4. Defendant FSH is a Delaware limited liability company that maintains its principal place of business in Columbus, Ohio, and which is owned by Genstar Capital LLC ("**Genstar**"), a Delaware limited liability company with its principal place of business in San Francisco, California. Upon information and belief, the owners of Genstar are residents of California and, therefore, Defendant FSH is a citizen of California for diversity jurisdiction purposes.

5. Defendant OTC is an Ohio limited liability company that maintains its principal place of business in Columbus, Ohio, and which is also owned by Genstar, which, as set forth above, is a citizen of California for diversity jurisdiction purposes.

6. This Court has personal jurisdiction over Defendants, as they are each entities that transact in business in Ohio and/or which have contracted for services in Ohio.

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000 and there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendants, on the other hand.

8. This Court is the proper venue over this action pursuant to 28 U.S.C. § 1391, as Defendants are each located in this judicial district.

## GENERAL ALLEGATIONS

9. On June 30, 2016, Plaintiff AKD, together with Plaintiff Dewitt, and Defendant FSH, on behalf of itself and its affiliates (including OTC), entered into the Agreement, a true and correct copy of which is attached hereto as Exhibit 1.

10. Section 2 of the Agreement provided that Defendant FSH was engaging the services of Plaintiffs to assist "in identifying and developing acquisition opportunities, including the development of acquisition opportunities databases; research, approaching, and introducing acquisition candidates; and collecting financial and operating information from acquisition candidates…."

11. Plaintiffs agreed to provide their services to Defendant FSH "exclusively with regard to the Industrial Distribution Industry and to not provide [s]ervices to any other person or entity engaged in the Industrial Distribution Industry or investing or potentially investing in the Industrial Distribution Industry."

12. In addition to the reimbursement of any expenses incurred by Plaintiffs and the payment of a monthly consulting fee, or retainer, of $3,000, Defendant FSH agreed to pay referral fees to Plaintiffs "[c]oncurrently with the closing of a Transaction with a Target Company in which after such closing [Defendant FSH and/or its affiliates] possesses voting control with respect to such Target Company." The referral fee to which Plaintiffs were entitled upon completion of a transaction to acquire a "Target Company" was for "3% of the Aggregate Valuation between $0 and $2,500,000; 2% of the Aggregate Valuation between $2,500,001 and $5,000,000; [and] 1% of any Aggregate Valuation above $5,000,000." The Agreement provides

3

that the referral fees would be reduced by any retainer fees paid by Defendant FSH from the later of the effective date of the Agreement or the closing of a previous "Target Company Transaction," as that term is defined in the Agreement, if any.

13. Section 5 of the Agreement required the Company to provide the definitive transaction documents for any completed "Target Company Transaction," so that Plaintiffs could confirm the calculation of their referral fees. Defendants did not provide such documents upon completion of the AIC acquisition.

14. The Agreement also provided that it could be terminated by either party upon it providing written notice of its intent to terminate, but provided that, upon such termination, Defendant FSH's obligation to pay referral fees for "Target Company Transactions which close within 12 months from the date that the related Target Company was Last Introduced by [Plaintiffs] to [Defendant FSH] (but in no event more than twelve months following the Termination Date)" and its obligation to share the definitive transaction documents survived such termination.

15. In March 2019, there was an amendment to the Agreement, which clarified the scope of services Plaintiffs would be providing to Defendants, including that such services would be provided on an exclusive basis within the "Industrial Distribution Industry," but which did not otherwise materially alter any of the terms thereof.

16. In September 2019, OTC paid referral fees to Plaintiffs upon the completion of two separate Target Company Transactions that closed at that time, in accordance with the Agreement.

17. Defendant FSH terminated the Agreement on January 21, 2022. Notwithstanding, the transaction to acquire AIC, a Target Company under the Agreement, was closed within twelve (12) months from the date the Company was "Last Introduced" to AIC.

18. In fact, Plaintiffs began the discussions with the principal owner of AIC, David Jacks ("**Mr. Jacks**"), on October 29, 2019, when he met directly with Mr. Jack's at AIC's facility to express Defendants' interest in acquiring AIC. During that meeting, Mr. Jacks instructed Plaintiff Dewitt to continue the discussions with AIC's counsel, John Wilkowski, Esq. ("**Mr. Wilkowski**"), and to not send direct communications from his OTC email address. Accordingly, from that point forward, until April 2021, Plaintiff Dewitt communicated exclusively with Mr. Wilkowski about the possibility of an acquisition. Ultimately, the initial discussions that commenced toward the end of 2019 were interrupted by the onset of the Covid-19 pandemic and did not materialize into an acquisition of AIC by Defendants.

19. Thereafter, on March 26, 2021, Plaintiff Dewitt was asked by Rob Webb ("**Mr. Webb**"), an Executive Vice President of Business Development with whom Plaintiff Dewitt worked on potential acquisitions by Defendants, to attempt to restart the discussions with Mr. Wilkowski around an acquisition of AIC by Defendants. Plaintiff Dewitt did, in fact, reach out to Mr. Wilkowski on March 31, 2021 and April 13, 2021, who then had Mr. Jacks reach out directly to Plaintiff Dewitt on April 21, 2021 to restart the dialogue and Plaintiff Dewitt commenced the process of putting Mr. Webb and Mr. Jacks in contact for purposes of an acquisition of AIC. To that end, between April 21, 2021 and May 7, 2021, Plaintiff Dewitt and Mr. Jacks had the following text message exchange:



20. These communications constitute the date on which AIC, a Target Company under the Agreement, was "Last Introduced" to Defendants for purposes of a Target Company Transaction. In fact, on May 13, 2021, Mr. Jacks met with Mr. Webb and the discussions that ultimately culminated in the acquisition of AIC continued in earnest. Mr. Jacks, who valued discretion during the negotiations, began a dialogue with Mr. Webb directly from that point forward and Plaintiff Dewitt was not involved in those discussions. Notwithstanding, the substantive discussions regarding the acquisition of AIC were commended by Plaintiff Dewitt.

21. Plaintiff Dewitt only received a handful of communications regarding the transaction after he formally introduced Mr. Jacks to Mr. Webb. For example, on July 26, 2021, Plaintiff Dewitt had the following text message exchange with Mr. Jacks:



Plaintiff Dewitt immediately brought these messages to Mr. Webb's attention.

22. Thereafter, on September 10, 2021, well before the Agreement had been terminated, Plaintiff Dewitt and Mr. Webb had the following text message exchange during which Mr. Webb not only confirmed that the discussions regarding the AIC acquisition were ongoing, but also that the deal was tied to Plaintiffs:



23. Mr. Webb reiterated to Plaintiff Dewitt on December 20, 2021 during a priority review call that the AIC transaction was going to definitely close in the first quarter of 2022 and that he would be paid a referral fee for that transaction.

24. On January 21, 2022, the Agreement was terminated by FSH.

25. Ultimately, the sale was consummated on or before March 30, 2022, when OTC publicly announced the transaction.

26. To Plaintiffs' great disappointment, Mr. Webb advised Plaintiff Dewitt that Defendants would not honor their obligation to pay referral fees from the completed transaction

8

under the guise that Plaintiffs had not been involved in "substantive discussions" with AIC within the 12 months that preceded the closing of the transaction.

27. Defendants' position is belied, however, by the plain terms of the Agreement, which does not, in any way, mention a requirement that Plaintiffs be involved in "substantive discussions" during the negotiation of a Target Company Transaction in order to receive their referral fee. In fact, Defendants' position is contrary to the manner in which other similar transactions, in connection with which Plaintiffs' introduction to acquisition targets in the same manner as the AIC transaction was introduced to Defendants resulted in a referral fee being paid, in accordance with the Agreement.

28. Further, Mr. Webb's own text messages to Plaintiff Dewitt as late as September 2021, in which he confirms that the AIC transaction was related to Plaintiffs or, in other words, entitled Plaintiffs to a referral fee.

29. In addition to their failure to pay the applicable referral fee, Defendants have also failed to provide Plaintiffs the definitive transaction documents so that they may confirm the calculation of the referral fees to which they are entitled.

30. Notwithstanding Defendants' machinations designed to avoid payment of Plaintiffs' referral fees, the AIC transaction closed within twelve (12) months of Plaintiffs' last introduction of AIC to Defendants and within the twelve (12) months following the termination of the Agreement. Simply stated, Plaintiffs are entitled to be paid their referral fee for the closing of the AIC transaction and to receive the definitive transaction documents so that they may confirm the amount of such referral fee. Defendants' refusal to honor their contractual obligations have caused Plaintiffs significant damages.

31. To that end, Plaintiffs caused the demand letter attached hereto as Exhibit 2 to be sent to Defendants on May 13, 2022, following which Defendants' counsel engaged in a brief discussion regarding the assertions made in the demand letter during which Plaintiffs caused the above text exchanges to be sent to Defendants' counsel. Notwithstanding, Defendants' counsel advised Plaintiffs' counsel that Defendants maintained their position that Plaintiffs are not entitled to a referral fee for the AIC acquisition because, in Defendants' opinion, Plaintiffs had not been involved in the substantive discussions regarding the acquisition.

32. Plaintiffs have retained the undersigned counsel to enforce their rights under the Agreement and are obligated to pay them reasonable attorneys' fees for their efforts.

33. All conditions precedent to the filing of this action have been performed, waived, or excused.

## COUNT I – BREACH OF CONTRACT

34. Plaintiffs repeat the allegations of Paragraphs 1 through 33 above as if set forth fully herein.

35. This is an action for breach of the Agreement.

36. The Agreement is a valid and enforceable contract entered between Plaintiffs and Defendant FSH, on behalf of itself and its affiliates, including OTC.

37. Plaintiffs complied with all their obligations under the Agreement.

38. Defendants have breached the Agreement by: (i) refusing to pay Plaintiffs a referral fee for the completion of the AIC acquisition by OTC, as required by Section 4(b) of the Agreement; and (ii) refusing to cause Plaintiffs to receive such definitive transaction documents for the AIC acquisition by OTC to enable Plaintiffs to confirm the calculation of such referral fees.

39. As a direct and proximate cause of Defendants' material breaches of the Agreement, Plaintiffs have sustained damages in excess of $75,000.

WHEREFORE, Plaintiffs demand the entry of a judgment in their favor and against Defendants for money damages, an award of their costs incurred prosecuting this action, and such further relief as the Court deems just and proper under the circumstances.

## COUNT II – QUANTUM MERUIT

40. Plaintiffs repeat the allegations of Paragraphs 1 through 33 above as if set forth fully herein.

41. This is an action for quantum meruit.

42. Plaintiffs provided a benefit to Defendant by introducing AIC for purposes of a potential acquisition, the value of which was in excess of $75,000.

43. Defendants accepted and retained the benefit.

44. Plaintiffs expected to be paid for their services, but Defendants have made no such payment.

45. It would be inequitable for Defendants to retain the benefit of Plaintiffs' services without paying the value thereof.

WHEREFORE, Plaintiffs demand the entry of a judgment in their favor and against Defendants for money damages, an award of their costs incurred prosecuting this action, and such further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated on this 12th day of October 2022.

Respectfully submitted,

/s/ Tracy L. Turner
Tracy L. Turner (0069927)
Of Counsel
**PENDLEY, BAUDIN & COFFIN, LLP**
7573 Ogden Woods Blvd
New Albany, OH 43054
Telephone: (614) 657-3454
tturner@pbclawfirm.com

**Trial Counsel for Plaintiffs**


By: /s/ Alexander F. Fox
Alexander F. Fox*
Florida Bar No. 167886
alexfox@alexanderfoxlaw.com
**Alexander F. Fox, P.A.**
*Counsel for Plaintiff*
255 Alhambra Circle, 8th Floor
Coral Gables, Florida 33134
Tel: (305) 448-1033

By: s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez*
Florida Bar No. 036423
**EFR LAW FIRM**
*Counsel for Plaintiff*
800 S. Douglas Road, Suite 350
Coral Gables, Florida 33134
Office: (305) 340-0034
eddie@efrlawfirm.com

* *Pro Hac Vice* Admission Pending

12